UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEOFF NELSON,

                    Plaintiff,

          v.

LEWIS COUNTY,

                    Defendant.

CASE NO. C11-5876 RJB

ORDER GRANTING DEFENDANT
LEWIS COUNTY'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendant Lewis County's motion for summary

judgment. Dkt. 19. The Court has considered the pleadings in support of and in opposition to

the motion and the record herein.

**INTRODUCTION AND BACKGROUND**

This is an employment termination case. Plaintiff Geoff Nelson's central allegation is

that Defendant Lewis County terminated Plaintiff's employment based upon his religious beliefs.

Dkt. 2 pp. 2, 4. The Complaint sets forth a litany of causes of action: (1) Discrimination based

on religion under Title VII; (2) Breach of Employment Contract; (3) Intentional Infliction of

Emotional Distress (Outrage); (4) Negligent Infliction of Emotional Distress; (5) Wrongful

Termination; (6) 14th Amendment Substantive Due Process; (7) Termination from employment based on Plaintiff's religion under 42 U.S.C. §1983; (8) Equal Protection; (9) 42 U.S.C. § 1985; (10) Procedural Due Process; (11) Hostile Work Environment; and (12) First Amendment Retaliation.  Dkt. 2 pp. 4-7.

Mr. Nelson, a 29 year old white male, was employed as a Juvenile Court Detention Officer within the Lewis County Juvenile Court, a division of the Lewis County Superior Court. Plaintiff was hired by the Juvenile Court in November, 2006. He was terminated from employment effective February 18, 2011. Dkt. 24 pp. 1; Dkt. 24-2 pp. 3.

In accordance with Plaintiff's employment records, the incidents that led to his termination commenced on January 15 and 16, 2011.  On January 15, 2011 Plaintiff was working in the control room of the detention center and was found to be watching television prior to the inmates being locked down for the night.  Robin Hood, the lead detention officer, told Plaintiff to turn off the television.  Plaintiff refused, and Ms. Hood turned off the television, upon which Plaintiff turned it back on, stating that Ms. Hood had no authority to tell him what to do.  The argument continued until Ms. Hood left the control room.  Dkt. 22 pp. 1-4; Dkt. 24-3 pp. 2-7.

Plaintiff denies that Ms. Hood instructed him to turn off the television or that he refused to do so.  Dkt. 25-1 p. 8

The following day, Ms. Hood met with Plaintiff and another detention officer at the beginning of the shift and told them of her expectations for how the shift was to be run.  She told them there would be no television in the control room before the detainees were locked down for the night.  Ms. Hood also told them that she found the video tapes that were being viewed inappropriate, as the content was religious in nature and made comments about a women's place being in the home.  Plaintiff again became upset with Ms. Hood, telling her she had no right to

tell them what to do or what to watch on television.  During this encounter, Plaintiff made a number of derogatory remarks toward Holly Spanski, the Juvenile Court Administrator, and her inability to discipline Plaintiff.  Ms Hood concluded the meeting by telling Plaintiff that he could take up his complaints with Charles West, the Detention Manager.  *Id.*

Plaintiff disputes the employment records account of what transpired on January 16, 2011.  Plaintiff denies that he made the statements attributed to him and that his behavior or comments were insubordinate.  Dkt. 25-1 p. 10.

On January 20, 2011, Plaintiff met with Detention Manager Charles West.  In the course of that meeting Plaintiff expressed defiance regarding the need to follow the shift lead's directives, stating that the shift lead could not tell him to stop watching TV and that "he would basically do what he wanted."  Dkt. 21 pp. 1.  When directed to comply with the shift lead's directives, Plaintiff refused to agree.  *Id.*

Plaintiff denies that he made these statements.  Dkt. 25-1 p. 11-12.  Plaintiff states that Mr. West's focus was on the religious content of the videos and allegations of religious activity in the workplace.  Dkt. 25-1 p. 11.  During this meeting Plaintiff and Mr. West did discuss the religious nature of the videos.  Unsure of what limitations that could be placed on the viewing of religious videos in the juvenile detention facility, Mr. West issued a temporary ban on viewing the videos until he could obtain further guidance.  Over Plaintiff's objection, Mr. West retained Plaintiff's video materials overnight, pending review of the appropriateness of viewing the religiously themed materials in the workplace.  Dkt. 21 pp. 3-4; Dkt 25-1 pp. 4-5.

Following a meeting with another employee, Mr. West called Plaintiff back into his office.  Plaintiff was informed that his argumentative behavior and insubordination could become a disciplinary matter.  *Id.* at p 5.  Plaintiff responded that he was not afraid as he was

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 3

1  protected by God.  Plaintiff repeated that he had been in trouble before and that nothing had

2  happened.  *Id*.  The following day Mr. West issued an e-mail providing accommodation for

3  viewing religious material at work, indicating they could be viewed in an onsite classroom.  Dkt.

4  25-1 p. 5.  Plaintiff was not disciplined as a result of his viewing of religious videos at work.

5      Mr. West submitted a memorandum to the Juvenile Court Administrator Holli Spanski

6  detailing Plaintiff's insubordination and argumentative behavior towards superiors and

7  recommending that he be placed onto a sustainable plan on how he will refrain from engaging in

8  argumentative behavior in the workplace.  Dkt. 21.

9      Plaintiff's performance evaluation for the period of his employment up until December,

10  2008, indicates that he had been directed in the past not to engage in argumentative behavior in

11  the workplace.  Dkt. 21 p. 10.   The evaluation also indicated that Plaintiff had held open bible

12  study while on duty despite previous verbal warnings that such was not acceptable behavior in

13  the workplace.  *Id*.  Plaintiff received a two day suspension for this conduct.  *Id*. at 18.

14      On January 28, 2011, Holli Spanski provided Plaintiff with notification of allegations of

15  violations of the Lewis County Juvenile Court Code of Conduct, specifically violations of the

16  codes prohibiting insubordination, engaging in uncooperative behavior with employees and

17  officials and disrespectful behavior toward positions of authority.  A disciplinary hearing was

18  scheduled for February 3, 2011 and Plaintiff was notified of the opportunity to appear and

19  present a response to the allegations and have his union representative present.  Dkt. 24-1.

20      Plaintiff did not appear at the hearing.  Plaintiff's explanation that his union declined to

21  represent him and that he was seeking legal representation does not negate the fact that he was

22  given the opportunity to appear and present a response.  See Dkt. 25-1 p13.  Based on the

23  information provided, Holli Spanski found that Plaintiff had committed multiple gross acts of

24

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 4

insubordination.   Plaintiff was suspended immediately pending proceedings of termination of employment.  Dkt. 24-1.

On February 9, 2011, Ms. Spanski notified Plaintiff that prior to making a final decision regarding termination of his employment, he would be provided an opportunity to respond and present any evidence as to why termination would be inappropriate.  A hearing date was set for February 17, 2011 and Plaintiff was given the right to have his union and/or other representative present.   Plaintiff was also entitled to present a written response to the allegations.   The notification stated that should Plaintiff choose not to respond, the decision would be based on the information available.  Dkt. 24-2.

At the February 17, 2011, hearing Plaintiff referred to the statements of allegations against him as lies.  Plaintiff did admit to making statements about being written up before and not being worried because "God's got my back."  Dkt. 25-1 pp. 13-14.  Plaintiff refused to accept responsibility for his behavior and continued to express disagreement that he could be disciplined. Plaintiff offered no excuse for his insubordination and stated that the entire process was a waste of time.  Dkt. 24 pp. 3; Dkt. 25-1 p. 14

Following the hearing, Holli Spanski terminated Plaintiff employment with Lewis County Juvenile Court effective February 18, 2011.  Dkt. 24-2 p. 3.

On February 22, 2011, Plaintiff's Union filed a termination grievance pursuant to their collective bargaining agreement asserting the lack of just cause.  Dkt. 24-2. Ms. Spanski conducted the Step One review and affirmed the termination as supported by just cause. Dkt. 24-3 pp. 1-5.

1   The Union submitted a request for Step Two review of the grievance, which was

2   conducted by Lewis County Superior Court Judge Nelson Hunt. Judge Hunt upheld the decision

3   finding that the termination was "thoroughly justified." Dkt. 24-3 p. 6-9.

4   The Union sought Step 3 grievance arbitration. A neutral arbitrator agreed to by the

5   Juvenile Court and the Union held a hearing, heard testimony and reviewed the record. The

6   arbitrator upheld the termination for just cause. Dkt. 24-3 pp. 10-45.

7   Plaintiff then commenced this lawsuit. In response to Defendant Lewis County's motion

8   for summary judgment Plaintiff submitted his own self-sworn declaration. Dkt. 25-1. This

9   declaration sets forth Plaintiff's belief that at the outset of his employment he was subject to a

10  continuous pattern of discrimination based upon his religion. *Id*. at 1-2.

11  Plaintiff's declaration is self-serving, uncorroborated, disorganized, and replete with

12  argument and inadmissible hearsay. In response, Defendant has moved to strike numerous

13  instances of hearsay. Dkt. 27 pp. 1-2.[1] The Court finds the motion has merit as the declaration is

14  replete with hearsay and argument. Defendant's motion to strike hearsay from the Declaration of

15  Geoff Nelson is granted. See Dkt. 25-1 and Dkt 27. The Court will disregard the inadmissible

16  hearsay in its consideration of the motion for summary judgment.

17  Plaintiff makes claims that he was subject to investigations based on unfounded

18  allegations of other employees concerning his proselytizing to the juvenile detainees. Dkt. 25-1

19  pp. 1-4. Plaintiff was not subject to discipline following these investigations. *Id*. at 3-4.

20  Plaintiff also asserts that he was singled out for unfavorable treatment for viewing religious

21

22

23  [1]   Defendant also seeks to have the declaration of Chevalo Ducket stricken as untimely. Dkt. 27 pp. 2. The Court denies this request as the declaration was filed two days late and Defendant has shown no prejudice. The Court does strike the hearsay portions of the declaration

24  as described in Defendant's motion.

1   materials, yet then admits that the directive concerning the viewing of religious materials was

2   addressed to all juvenile court employees.  *Id*. at 2, 5.

3         Plaintiff also submitted the untimely declaration of Chevalo Duckett, a co-employee of

4   Plaintiff.  Dkt. 26.  This declaration states that he was present when Ms. Hood  told Plaintiff that

5   they were not to have the TV on in the control room.  He states that he and Plaintiff were

6   viewing religious material that Ms. Hood did not like hearing.  *Id*. at p. 8.  Mr. Duckett relayed

7   this information in a meeting with Mr. West and was instructed by Mr. West not to view

8   religious material in the workplace.  *Id*. at 8-9.

9                               **SUMMARY JUDGMENT STANDARD**

10        Summary judgment is appropriate only when the pleadings, depositions, answers to

11   interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories,

12   and other materials in the record show that "there is no genuine issue as to any material fact and

13   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a

14   motion for summary judgment, the evidence, together with all inferences that can reasonably be

15   drawn there from, must be read in the light most favorable to the party opposing the motion.

16   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

17        The moving party bears the initial burden of informing the court of the basis for its

18   motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex*

19   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of

20   proof, the moving party must make a showing that is sufficient for the court to hold that no

21   reasonable trier of fact could find other than for the moving party.  *Idema v. Dreamworks, Inc*.,

22   162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

23

24

1    To successfully rebut a motion for summary judgment, the non-moving party must point

2    to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

3    *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact that might

4    affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477

5    U.S. 242, 248 (1986).  A dispute regarding a material fact is considered genuine "if the evidence

6    is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* at 248.

7    There must be specific, admissible evidence identifying the basis for the dispute.  <u>S.A. Empresa</u>

8    <u>de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc</u>., 690 F.2d 1235, 1238 (9th Cir.

9    1980).

10    The mere existence of a scintilla of evidence in support of the party's position is

11    insufficient to establish a genuine dispute; there must be evidence on which a jury could

12    reasonably find for the party.  *Anderson*., at 252.  A plaintiff's subjective belief in an

13    employment discrimination case does not create a genuine issue of fact.  *Bradley v. Harcourt,*

14    *Brace & Co.,* 104 F.3d 267, 270 (9th Cir. 1996).

15    Defendant has moved for summary judgment on each of Plaintiff's claims.  Plaintiff has

16    failed to present any discernible argument in response to the motion in regard to a number of

17    these claims.  See Dkt. 25.  Local Rule CR 7(b)(2) requires each party opposing a motion to file

18    a response.  The rule states, in relevant part that "[i]f a party fails to file the papers in opposition

19    to a motion, such failure may be considered by the court as an admission that the motion has

20    merit."  Although it is within the Court's discretion to view Plaintiffs' failure to respond as

21    acquiescence to the granting of the motion as to the abandoned claims, the Court will review the

22    motion on its merits to ensure entry of judgment is appropriate.

23

24

1           **DISCRIMINATION BASED ON RELIGION UNDER TITLE VII**

2        Title VII prohibits employee discrimination on the basis of race, color, religion, sex, or

3 national origin.  See 42 U.S.C. § 2000e–2(a).  To prevail on a Title VII discrimination claim, a

4 plaintiff must establish a prima facie case of discrimination by presenting evidence that "gives

5 rise to an inference of unlawful discrimination."  *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145,

6 1148 (9th Cir.1997).  Plaintiff may establish discrimination in two ways.  He may produce direct

7 or circumstantial evidence demonstrating that a discriminatory reason more likely than not

8 motivated the employer. See *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir.

9 2008).  Alternatively, he may apply the burden-shifting analysis set forth in *McDonnell Douglas*

10 *Corp. v. Green*, 411 U.S. 792 (1973).

11        Under the McDonnell Douglas framework, to establish a prima facie case, the plaintiff

12 must show that: (1) he belongs to a protected class; (2) he was qualified for her position and was

13 performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly

14 situated individuals outside of his protected class were treated more favorably.  *Davis v. Team*

15 *Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *McDonnell Douglas Corp. v. Green*, 411 U.S.

16 792, 802 (1973).  The degree of proof required to establish a prima facie case for Title VII on

17 summary judgment is minimal.  See *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir.

18 2005).  Under the *McDonnell Douglas* framework, once a plaintiff succeeds in showing a prima

19 facie case, the burden then shifts to the defendant to articulate a "legitimate, nondiscriminatory

20 reason" for its employment decision.  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).

21 "Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a

22 triable issue of fact that the defendant's proffered reason was a pretext for unlawful

23 discrimination."  *Id*.

24

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 9

1    In addition to prohibiting discrimination based upon religious beliefs, Title VII also

2    prohibits retaliation by making it unlawful "for an employer to discriminate against any of [its]

3    employees ... because [he] has opposed any practice that is made an unlawful employment

4    practice by this subchapter." 42 U.S.C. § 2000e–3(a).  To establish a prima facie case of

5    retaliation, a plaintiff must show (1) involvement in a protected activity, (2) an adverse

6    employment action, and (3) a causal link between the two.  *Thomas v. City of Beaverton*, 379

7    F.3d 802, 811 (9th Cir. 2004).

8    Finally, to state a claim for harassment under Title VII, a plaintiff must show that (1) he

9    was subjected to verbal or physical conduct based on his membership is a protected class; (2) the

10   conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

11   conditions of the plaintiff's employment and create an abusive work environment.  *Vasquez v.*

12   *County of Los Angeles,* 349 F.3d 634, 642 (9th Cir. 2003).

13   Here Plaintiff has not identified any Title VII "protected activity."  Plaintiff suggests that

14   he was discriminated against based upon his Christian Fundamentalism.  Plaintiff contends he

15   was terminated for watching religiously themed videos a work.  The Court can find no evidence

16   in the record that his termination of employment was in any way related to his Christian

17   fundamentalism.  Moreover, restrictions placed on his engaging in open bible study, quoting

18   scripture to juveniles detained in the facility, and openly watching religiously themed videos at

19   work would not unreasonably infringe on his exercise of religion.  See *Berry v. Department of*

20   *Social Services*, 447 F.3d 642 (9th Cir. 2006).  Nor has Plaintiff alleged, much less identified,

21   some other similarly situated employee (juvenile dentition officer) who was treated more

22   favorably than was he.

23

24

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 10

1    Even were Plaintiff able to establish a prima facie case, the Defendant has met its burden

2    of establishing a nondiscriminatory motive for Plaintiff's termination, i.e. insubordination.

3    Plaintiff has presented no evidence, and the Court cannot deduce any, that Plaintiff's religious

4    beliefs motivated the decision to terminate his employment.  Plaintiff has failed to provide any

5    factual allegations that would support his conclusion that the actions of the Defendant were

6    motivated by religious animus.

7    On this record, Plaintiff cannot establish a prima facie Title VII discrimination claim,

8    even when the facts are (as they must be) viewed in the light most favorable to him.  His Title

9    VII religious discrimination claim is subject to dismissal.

10   Defendant seeks summary judgment on Plaintiff's Title VII retaliation claim on a similar

11   basis.  On this record, Plaintiff cannot establish a prima facie Title VII discrimination claim,

12   even when the facts are (as they must be) viewed in the light most favorable to him.  His Title

13   VII retaliation claim is subject to dismissal.

14   Defendant argues that Plaintiff's Title VII hostile work environment claim also fails.

15   Plaintiff does not seriously argue or allege that any purported religious animus was so pervasive

16   or severe such as to alter the conditions of his employment at all, much less in an actionable way

17   under clearly established law in this and other Circuits.  As the Defendant argues, Plaintiff has

18   not connected his religious beliefs to any alleged discrimination, retaliation, or the work place

19   environment.

20   On this record, Plaintiff has not established, and cannot establish, a prima facie Title VII

21   hostile work environment claim, even when the facts are (as they must be) viewed in the light

22   most favorable to him.  The Title VII hostile work environment claim is subject to dismissal.

23

24

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 11

1

**EQUAL PROTECTION AND § 1983**

2       To state a claim for damages arising from an alleged constitutional violation under 42

3   U.S.C. § 1983, a plaintiff must allege (1) that the defendant, a "person," acted under color of

4   state law, (2) to deprive the plaintiff of federal constitutional or legal rights.  *Ove v. Gwinn*, 264

5   F.3d 817, 824 (9th Cir. 2001).  There is no vicarious liability under Section 1983.  *Bd. of County*

6   *Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  Rather, to establish municipal

7   liability under Section 1983, the plaintiff must identify a custom, practice, or policy that causes

8   his or her injury.  *Monnell v. Dep't of Soc. Servs*., 436 U.S. 658, 690-92 (1978).  This can be

9   established through any one of the following theories: (1) that a county employee was acting

10  pursuant to an expressly adopted official policy; (2) that a county employee was acting pursuant

11  to a longstanding practice or custom; (3) that the individual who committed the wrong had final

12  decision-making authority; or (4) that someone with final decision-making authority ratified a

13  subordinate's action and its basis.  *Lytle v. Carl*, 382 F.3d 978, 982, 987 (9th Cir. 2004).

14      For purposes of municipal liability under Section 1983, to state a claim for a violation of

15  the Equal Protection Clause, the "plaintiff must show that the defendants acted with an intent or

16  purpose to discriminate against the plaintiff based upon membership in a protected class."  *Lee v.*

17  *City of Los Angeles,* 250 F.3d 668, 686 (9th Cir. 2001).  Where the plaintiff challenges a facially

18  neutral governmental policy, practice, or custom, to prove disproportionate impact, the plaintiff

19  must further show that "some invidious or discriminatory purpose underlies the policy."  *Id.*

20      Plaintiff was terminated for insubordination.  He has presented no evidence that he was

21  treated differently than someone who engaged in the same conduct.  Nor has he presented

22  evidence of an intent or purpose to discriminate against him based on his religious beliefs.  There

23  is no evidence that a Lewis County employee was acting pursuant to an expressly adopted

24

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 12

1  official policy of religious discrimination; (2) that a county employee was acting pursuant to a

2  longstanding practice or custom of religious discrimination; (3) that any discriminatory conduct

3  was committed by an employee having final decision-making authority; or (4) that someone with

4  final decision-making authority ratified a subordinate's discriminatory action and its basis.

5      Plaintiff's 42 U.S.C. § 1983 claims are subject to dismissal.

6                **FIRST AMENDMENT RETALIATION CLAIM**

7      To establish a prima facie case of retaliation, a plaintiff must show: (1) he was engaged in

8  a protected activity; (2) he was subjected to an adverse employment action; and (3) there was a

9  causal link between the protected activity and the adverse employment action. *Jurado v. Eleven-*

10 *Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987).

11     Once a plaintiff has established a prima facie case, the burden shifts to the defendant to

12 put forward a legitimate, non-discriminatory reason for the adverse employment action. See

13 *Winarto v. Toshiba Am. Elec. Components*, 274 F.3d 1276, 1284 (9th Cir. 2001).   If the

14 defendant satisfies this burden, the plaintiff must then prove by a preponderance of the evidence

15 that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext

16 for retaliation. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).   In this regard,

17 the plaintiff must produce sufficient evidence to support a rational finding that the legitimate,

18 non-discriminatory reasons proffered by the defendant were false, and that more likely than not

19 discrimination was the real reason for the employment action.   *Weinstock v. Columbia*

20 *University*, 224 F.3d 33, 42 (2nd Cir. 2000).

21     Here, the Plaintiff claims he was terminated for watching religious themed

22 videos at work.  He has no evidence supporting this claim.  Therefore, as with the Title

23 VII claim, the burden shifting analysis applies.  There is substantial evidence that the

24

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 13

1   Plaintiff was terminated for a non-discriminatory reason, i.e. insubordination.  Therefore, the

2   Plaintiff must present evidence that to support a rational finding that the legitimate, non-

3   discriminatory reasons proffered by the defendant were false, and that more likely than not

4   discrimination was the real reason for the employment action.  He has not done so.

5   Plaintiff has failed to raise a material issue of fact that religious discrimination was a

6   basis for his termination.  Summary judgment is appropriate.

7   **STATE LAW EMOTIONAL DISTRESS CLAIMS**

8   Plaintiff's state law emotional distress claims are subsumed in his discrimination claim, as

9   negligent infliction of emotional distress is not a stand alone cause of action in employment

10  cases.  *Robel v. Roundup Corp.*, 103 Wn.App. 75 (2000); *Chea v. Men's Wearhouse, Inc.*, 85

11  Wn.App. 405 (1997).

12  To establish an negligent infliction of emotional distress cause of action, the Plaintiff

13  must show: (1) that his employer's acts injured him; (2) the acts were not a workplace dispute or

14  employee discipline; (3) the injury is not covered by the Industrial Insurance Act; and (4) the

15  dominant feature of the negligence claim was the emotional injury.  *Little v. Windermere*

16  *Relocation, Inc.*, 301 F.3d 958, 972 (9th Cir. 2002).  In Washington, emotional distress is

17  available as an element of damages in a discrimination claim.  Claims for negligent infliction of

18  emotional distress do not stand on their own as separate causes of action in employment cases.

19  *Bishop v. State*, 77 Wn.App. 228, 234–35 (1995).

20  Plaintiff's claim claims for emotional distress are based on the same facts he alleges in

21  support of his discrimination and retaliation claims.  As such, he cannot establish a separate

22  claim for the negligent infliction of emotional distress under Washington law.  This claim is

23  subject to dismissal.

24

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 14

1    The elements of a claim of intentional infliction of emotional distress (outrage) are: 1)

2    extreme and outrageous conduct; 2) intentional or reckless infliction of emotional distress; and 3)

3    actual result to the plaintiff of severe emotional distress. *Dicomes v. State*, 113 Wn.2d 612, 630

4    (1989).  The conduct in question must be "so outrageous in character, and so extreme in degree,

5    as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

6    intolerable in a civilized society." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975).  The tort "does

7    not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

8    trivialities." *Id*. at 59.  Dismissal of a claim of outrage is appropriate if the court determines that

9    reasonable minds could not differ as to whether the conduct was extreme and outrageous.

10   *Dicomes*, at 630; *Guffey v. State*, 103 Wn.2d 144, 146 (1984)

11   Plaintiff's allegations do not rise to the level of outrage as a matter of law.  Defendant is

12   entitled to summary judgment on this claim.

13                     **BREACH OF EMPLOYMENT CONTRACT**

14   Plaintiff was a member of a union and his employment was subject to a collective

15   bargaining agreement.  The Plaintiff has failed to identify any provision of the collective

16   bargaining agreement that was allegedly breached.

17   Further, the Plaintiff's termination was upheld in the arbitration proceeding as being for

18   just cause and this conclusion is entitled to preclusive effect in Plaintiff's breach of contract

19   action. See *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994).  Washington

20   recognizes the preclusive effect of administrative findings.  See *Christensen v. Grant County*

21   *Hosp. Dist.*, 152 Wn.2d 299, 307 (2004); *Hilltop Homeowners' Ass'n v. Island County*, 126

22   Wn.2d 22, 30-31 (1995).

23

24

1    The arbitrator found sufficient cause for the discharge.  Therefore, the collective

2  bargaining agreement was not violated.  See *Skillsky v. Lucky Stores, Inc*., 893 F.2d 1088, 1095

3  (9th Cir. 1990).  The preclusive effect of the unchallenged arbitration decision conclusively

4  establishes the validity of the "just cause" basis for Plaintiff's termination and compliance with

5  the CBA.

6    Plaintiff's breach of contract claim is subject to dismissal.

7                    **PROCEDURAL AND SUBSTANTIVE DUE PROCESS**

8    Plaintiff does not dispute that he was given all of the pre-termination due process called

9  for under his collective bargaining agreement and *Cleveland Bd. of Educ. v. Loudermill*, 470

10  U.S. 532, 546 (1985).

11    Although Plaintiff makes an argument that the decision to terminate him was

12  predetermined, he has provided no credible evidence support such a claim.  Plaintiff received

13  notice of the charges against him, an explanation of the evidence and an opportunity to present

14  his side of the story.  Plaintiff's statements concerning his representation by legal counsel and his

15  union do not alter the fact that he was provided due process prior to and after his termination.

16  The procedural due process claim is subject to dismissal.

17    Substantive due process forbids the government from depriving a person of life, liberty,

18  or property in such a way that "shocks the conscience" or "interferes with rights implicit in the

19  concept of ordered liberty."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  A threshold

20  requirement to a substantive due process claim is the plaintiff's showing of a liberty or property

21  interest protected by the Constitution.  *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d

22  56, 62 (9th Cir. 1994).  There is no clearly established constitutional right to substantive due

23  process protection to continued public employment.  *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th

24

Cir. 1989).  Further, Plaintiff has not presented any evidence that his termination  "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty."  Summary judgment is appropriate on this claim.

**42 U.S.C. § 1985**

Plaintiff's Complaint references an action pursuant to 42 U.S.C. § 1985.  To state a claim under 42 U.S.C. § 1985 for a conspiracy to violate civil rights, a plaintiff must plead four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). The second element requires the plaintiff to identify a legally protected right and demonstrate a deprivation of that right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.  *Id.*

Plaintiff's claim under § 1985 is subject to dismissal based on the same failures that apply to his discrimination claims.  In addition, Plaintiff's vague and conclusory allegations of a conspiracy are insufficient to state a claim for conspiracy under § 1985.  See *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989)(failure to show a meeting of the minds and the deprivation of rights was fatal to civil rights conspiracy claim).

Plaintiff's 42 U.S.C. § 1985 claim is subject to dismissal.

1

## CONCLUSION

2     For the foregoing reasons, Defendant Lewis County is entitled to summary judgment.

3     Therefore, it is hereby **ORDERED**:

4     Defendant Lewis County's Motion for Summary judgment (Dkt. 19) is **GRANTED**.

5     Plaintiff's case is **DISMISSED** in its entirety and with **PREJUDICE.**

6     Dated this 19th day of September, 2012.

7

8

9     ROBERT J. BRYAN
      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT LEWIS
COUNTY'S MOTION FOR SUMMARY
JUDGMENT- 18